IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TAMMY D. HOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:09cv317-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Tammy D. Hood ("Hood"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Hood then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

Hood was 44 years old at the time of the hearing before the ALJ. (R. 536.) She completed tenth grade. (R. 538.) Hood's prior work experience includes working as a laundry presser and cashier. (R. 540-41.) Hood alleges that she became disabled due to depression and a back condition. (R. 544.) Following the administrative hearing, the ALJ concluded that Hood suffers from severe impairments of disorders of the back (discogenic and degenerative) and depression with anxiety. (R. 25.) The ALJ determined Hood is able "[f]rom a physical standpoint at the light exertional level [to] lift, carry, and push/pull up to 20 pounds, occasionally and up to 10 pounds frequently; walk and stand frequently; occasionally bend and crouch; and frequently reach, handle, finger, talk, and hear." (R. 32.) The ALJ determined that Hood is able to return to her prior work as a presser and cashier. (R. 36.) Accordingly, the ALJ concluded that Hood is not disabled. (*Id*.)

### IV.  The Issues

In her brief, Hood raises the following claims:

(1)   The Commissioner's decision should be reversed because the ALJ failed to evaluate the medical opinions expressed by Hood's treating physician under the proper legal standard.

(2)   The Commissioner's decision should be reversed because the ALJ erred by failing to provide adequate reasons for rejecting contrary opinions provided by the examining State physicians.

(3)   The Commissioner's decision should be reversed because the

>   ALJ did not give proper consideration to the effect of the combinations of Hood's impairments on her ability to perform work activities.
>
> (4) The Commissioner's decision should be reversed because the ALJ did not comply with Social Security Ruling 02-01p in evaluating Hood's obesity.

(Doc. No. 13, Pl's Brief, p. 8.)

### IV. Discussion

Hood raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of Hood's specific arguments because the court concludes that the Commissioner erred as a matter of law, and thus, this case is due to be remanded for further proceedings.

Hood complains that the ALJ failed to properly credit the opinion of her treating physician, Dr. J. Paul Maddox, an orthopedic surgeon at Southern Bone and Joint Specialists, P.C. Specifically, Hood asserts that the ALJ did not assign appropriate weight to Dr. Maddox's opinion that she is able to lift no more than 0 to 10 pounds or stand and bend no more than 2 hours, that she should not push or pull with her arms or back is not recommended, and that her ability to work is severely impacted. (R. 499B- 499C.)

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986). The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen,* 816 F.2d 578, 581 (11th Cir. 1987).

When summarizing the medical evidence, the ALJ discounted Dr. Maddox's opinion as follows:

> The Administrative Law Judge has considered the form certified by Dr. Maddox's signature on July 9, 2004 (Exhibit B-9E). In most instances, Dr. Maddox simply checked off the claimant's level of physical restriction. For example, the check marks reflect that the claimant had reached maximum medical improvement; she could occasionally lift 10 pounds; arm/back pushing/pulling was not recommended, but her hand(s) grasping ability was not impacted; she could operate or be exposed to moving machinery and exposed to marked changes in temperature/humidity; and that the claimant's ability to work was severely impacted. It may well be that Dr. Maddox simply did not understand the highly unusual, non-official form that the claimant asked him to complete and certify because this case simply does not contain the types of reports, physical examinations and diagnostic evaluations that establish that degree of restriction in the claimant's functional capacity. Moreover, in his narrative, Dr. Maddox wrote that the claimant was non-

>operative, but she probably needed a fusion; the claimant's permanent partial impairment rating was a mere 15%; and she might manage sedentary or light duty work."

(R. 27.)

This court cannot conclude that the ALJ's rejection of Dr. Maddox's opinion is supported by substantial evidence. First, the court notes that the ALJ's finding that Dr. Maddox's notes establish that Hood had "reached maximum medical improvement" and that her condition was "non-operative" is an inaccurate representation of the evidence. (R. 27.) The form completed by Dr. Maddox on July 9, 2004, indicates that, when asked whether the "patient reached maximum medical improvement," Dr. Maddox answered the question by entering a checkmark next to the word "Yes" and drawing an arrow from his answer toward the handwritten word "non-operative." (R. 499B.) Dr. Maddox also drew an arrow from his answer to a handwritten notation stating that Hood "could benefit from a lumbar fusion" and "see notes 3/12/04." (*Id*.) Dr. Maddox's March 12, 2004 notations state the following:

>Tammy is in today and I did look at awake discography at the levels above and before the obviously unstable L4-5 disc with listhesis Grade II. Tammy I think has a good understanding of what is wrong. We did not see pathology at the adjacent discs. If she comes to surgery, we would recommend a disc excision interbody fusion at that level with instrumentation. It is possible that we might have to instrument one level higher but she would not need an interbody fusion there. That would only be if that were needed for reduction of the spondylo. I am not planning on that at this point. I have gone through the procedure, attendant risks of that operation with Tammy in detail. She will make her own decision about it or if she wants to discuss it with me further, she may. She indicates that she has about reached an end point in terms of her ability to tolerate this and indicates that full conservative measures have failed to help her adequately."

(R. 424.) Therefore, when reading Dr. Maddox's July 9, 2004 notation in conjunction with his

7

March 12, 2004 entry, it is clear that Dr. Maddox's opinion was that conservative measures were no longer effective and that Hood had reached maximum non-operative medical improvement. Dr. Maddox did not state at any point in the medical records that Maddox's back condition itself was non-operative.

More importantly, although the ALJ determined that Dr. Maddox's opinion is not supported by "reports, physical examinations, and diagnostic evaluations," the medical records indicate that Hood received extensive treatment from Dr. Maddox and other treating orthopedic specialists at Southern Bone & Joint Specialists after her car accident on July 25, 2003.[4] Shortly after the wreck, an emergency room physician diagnosed Hood as suffering from cervical strain and a contusion. (R. 418.) At that time, an x-ray of Hood's cervical spine indicated no abnormalities. (R. 422.) On August 19, 2003, Hood went to Southern Bone & Joint Specialists with complaints of significant incapacitating low back pain. (R. 436.) Dr. Bonnie Dungan noted that x-rays "reveal[ed] an L4-5 spondylolisthesis, which looks acute and chronic" and the presence of a fracture. (R. 436-37.) Dr. Dungan's impression was spondylolysis of L4-5, acute and chronic; cervicalgia; left shoulder sprain/strain; right knee sprain/strain, which may be subset of her back injury; left wrist sprain/strain. (R. 437.)

On August 25, 2003, Dr. Maddox examined Hood and reviewed the results of an MRI.

---

[4] The medical records set forth the details of the car accident as follows:

> She was a driver who was wearing a seat belt, in an old vehicle 1984. She was stopped at a light and a car behind her accelerated and crashed into her car. Her seat tore loose and her body, knees and back were flung into the steering wheel compartment.

(R. 436.)

8

(R. 453.) Dr. Maddox also determined that Hood suffered from "spondylolisthesis of L4 on 5 that looks chronic" and that the "MRI would suggest a significantly degenerative disc at 4-5 with reactive end plate changes." (*Id*.) On September 30, 2003, Hood returned to Dr. Dungan for a follow-up appointment, complaining of neck, shoulder, and arm pain. (R. 433.) Dr. Dungan noted that Hood was wearing a lumbar brace, that a full body scan revealed a right rib fracture, that her "cervical range of motion is grossly within normal limits," and that her pain may be worsening. (*Id*.) On October 14, 2003, Dr. Dungan noted that Hood's medication was changed to Parafon Forte, Darvocet, Lexapro, and HCTZ. (R. 431.) On October 16, 2003, Dr. Maddox noted that a bone scan "reveal[ed] some increased activity in the low back area although this may be present from pre-existing arthritis with the patient['s] insistence that she was not having any symptoms in her low back prior to the accident" and that he would "have to assume that there may have been some new bony trauma there on the right side." (R. 430.)

On October 28, 2003, Dr. Dungan noted that an MRI "reveal[ed] a disc bulge at C5-6 and another one at C6-7 creating some stenosis at C5-6." (R. 428, 457.) On October 31, 2003, a radiologist noted that an x-ray of Hood's lumbar spine indicated "vacuum phenomenon of dessicated degenerative disc disease at the L4-5 level. Pars defect posteriorly at the lamina of L4 bilaterally with overgrowth and sclerosis, associated with the Grade I spondylolisthesis seen of L4 on L5." (R. 452.) On November 18, 2008, Hood returned to Dr. Dungan complaining of severe pain in the morning, as well as interrupted sleep. (R. 427.) Dr. Dungan recommended that Hood continue taking her medications and prescribed Elavil for sleep. (*Id*.)

On December 9, 2003, Hood returned to Dr. Dungan's office and received eight trigger

point injections of Depomedrol. (R. 426.) Dr. Dungan noted that "[r]eally [Hood's] pain was no better" and that her pain range was "about 9 and 10." (*Id.*) During the examination, Hood complained that her medications, including Lexopril, Imipramine, Hydrochlorothiazide, Bextra, and Darvocet" were not helpful. (*Id.*) Dr. Dungan's impression was "[c]ervicalgia on C5-6 stenosis, trigger point injections with no improvement and cervical epidural steroids." (*Id.*)

On December 17, 2003, Hood returned to Dr. Maddox's office. Dr. Maddox noted that "studies do reveal the pars defects at 4-5" which he "think[s] are chronic" and that there is "some increased activity at that level on the right which makes [him] think that she has had some new trauma to this area." (R. 430.) In addition, Dr. Maddox recommended an epidural and advised Hood to consider a discography and fusion planning. (*Id.*) Dr. Maddox also stated that Hood "has about reached that point but we will hopefully see some improvement with the epidural." (*Id.*)

On February 17, 2004, Hood returned to Dr. Dungan's office, reporting that after her past injection she "had great relief for a week and then she did have some pain modulation" and that the pain was increasing in intensity. (R. 425.) Dr. Dungan's impression was cervicalgia with chronic sprain and strain of the neck and a C5-6 disc bulge. (*Id.*) Dr. Dungan administered 12 trigger point injections of Depo Medrol and Lidocaine. (*Id.*)

On March 12, 2004, Hood returned to Dr. Maddox for a follow-up appointment. (R. 424.) Dr. Maddox conducted an "awake discography" and determined that Hood had an "obviously unstable L4-5 disc with listhesis Grade II." (*Id.*) The orthopedic surgeon

recommended a disc excision interbody fusion and discussed the risks involved with such a procedure. (*Id.*) Dr. Maddox noted that Hood "has about reached an end point in terms of her ability to tolerate this and indicates that full conservative measures have failed to help her adequately." (*Id.*)

On March 16, 2004, Dr. Dungan noted that Hood suffered from severe pain in the cervical region, levator scapula, trapezius, and rhomboids. (R. 423.) Dr. Dungan administered 12 trigger point injections and determined that Hood's "cervicalgia really not stable." (*Id.*) On July 9, 2004, Dr. Maddox completed a form indicating that Hood had reached maximum non-operative medical improvement, that she "could benefit from a lumbar fusion," that her permanent partial impairment rating was 15%, that she could occasionally lift no more than 0 to 10 pounds, stand or stoop no more than 0 to 2 hours at a time, and that her ability to work was "severely impacted." (R. 499-C.) In addition, Dr. Maddox noted that Hood "might manage sedentary/light duty at best" and that she "probably needs a fusion." (*Id.*)

Given the objective medical evidence indicating that Hood suffers from chronic cervicalgia and spondylolisthesis with two bulging discs, as well as medical records indicating that Hood received extensive medical treatment, including numerous trigger point injections and pain medication, for her back condition, the court cannot conclude that the ALJ's determination that this case "does not contain the types of reports, physical examinations and diagnostic evaluations that establish that degree of restriction in the claimant's functional capacity" is supported by substantial evidence.

The court also concludes that the ALJ failed to fully develop the record with respect to

Hood's back condition. Although the ALJ concluded that Hood "[f]rom a physical standpoint at the light exertional level . . . is able to lift, carry, and push/pull up to 20 pounds occasionally and up to 10 pounds frequently; walk and stand frequently; occasionally bend and crouch; and frequently reach, handle, finger, talk, and hear, " there are no medical records or residual functional capacity assessments indicating that Hood is able to perform these activities. When determining that Hood is able to lift, carry, and push/pull up to 10 pounds frequently and 20 pounds occasionally, the ALJ substituted his judgment for that of a medical specialist. This he cannot do. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). Likewise, the ALJ failed to resolve inconsistencies in the evidence. For example, in his July 9, 2004, report, Dr. Maddox indicated that Hood "*might* manage sedentary/light duty *at best*," that her permanent partial impairment rating was 15%, and that her ability to work is "severely impacted." (R. 499-B, 499-C.) In his opinion, the ALJ speculated that "[i]t may well be that Dr. Maddox simply did not understand the highly unusual, non-official form that the claimant asked him to complete and certify. . . ." (R. 27.) An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected a finding. The ALJ, however, did not resolve the ambiguities and inconsistencies in Dr. Maddox's report or seek to further develop the record. A consultative examiner or other medical specialist would be better able to determine whether Hood's back and neck condition would limit her residual functional capacity to perform work. It is error for the ALJ to fail

to obtain additional testing or otherwise develop the evidence, if that information is necessary to make an informed decision. *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). Thus, the court cannot conclude that the ALJ's determination that Hood has the residual functional capacity to perform light work is supported by substantial evidence

Because the ALJ failed to properly consider an orthopedic specialist's opinion that Hood's back condition severely impacts her ability to perform work or fully develop the record with respect to Hood's condition, it is impossible for the court to determine whether the Commissioner's decision to deny benefits was rational and supported by substantial evidence.[5] The court therefore concludes that this case is due to be remanded.[6]

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

---

[5] The record indicates that Hood's depression and anxiety are also severe impairments. Consequently, after the ALJ properly considers any effect Hood's back condition has on her residual capacity to perform work, the ALJ should also consider the effect of her mental health impairments in combination with her back condition and other impairments. The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singularly or in combination – to create a disability. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).

[6] The plaintiff also argues that the ALJ failed to properly consider her obesity. Hood alleges no facts and points to no evidence in the record to support her position that her obesity places significant limitations on her ability to work. The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (It is not the court's responsibility to seek out facts in support of the plaintiff's position.) More importantly, however, the objective medical evidence of record does not demonstrate that any treating or consultative physicians placed limitations on Hood due to her obesity. Consequently, she is entitled to no relief on this basis.

Done this 28th day of May, 2010.

                                        /s/Charles S. Coody
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE